IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 08-cv-00830-WYD-BNB

LUVIBIDILA J. LUMUENEMO,

    Plaintiff,

v.

CITIGROUP INC. d/b/a CITIMORTGAGE, INC.,

    Defendants.

## ORDER

I.    INTRODUCTION

THIS MATTER is before the Court on Defendant Citigroup Inc.'s Motion to Compel Arbitration and to Stay Further Proceedings Against Defendant Citigroup Inc. Pending Completion of the Arbitration ("Defendant's Motion"). The Complaint in this matter asserts the following claims against Defendant: 1) race-hate and national origin based discrimination, 2) conspiracy, and 3) retaliation.

Defendant avers that all of the claims asserted by Plaintiff are subject to an arbitration provision set forth in the Employment Arbitration Policy section of its Employee Handbook. Thus, on June 3, 2008, Defendant filed a motion requesting this Court to compel arbitration of Plaintiff's claims and to stay proceedings in this case pending the arbitration.

On July 14, 2008, Plaintiff filed a response in opposition to Defendant's motion. Plaintiff disputes that the Arbitration Agreement is valid, arguing the following: 1) the

Arbitration Agreement is illusory because Defendant unequivocally retained the unilateral and unfettered right to modify the policy at its sole discretion; 2) the disclaimer in the Employee Handbook renders the Arbitration Agreement non-binding; and 3) the Arbitration Agreement is void as against public policy as it does not allow for post-hearing briefs and thus violates Plaintiff's essential right to collect attorney's fees.  On July 29, 2008, Defendant filed a reply in support of its motion.  On August 15, 2008, Plaintiff's Sur-Reply was accepted for filing.

II. ANALYSIS

    A. Enforcement of Arbitration Agreements Generally

Turning to my analysis, the Federal Arbitration Act ("FAA") permits a district court to compel arbitration where one party has refused or failed to comply with an arbitration agreement.  *See Gourley v. Yellow Transp.,* 178 F. Supp. 2d 1196, 1201 (D. Colo. 2001).  I note that "[t]here is a strong federal policy encouraging the expeditious and inexpensive resolution of disputes through arbitration."  *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1488-89 (10th Cir. 1994).

To this end, courts must interpret arbitration clauses liberally, and all doubts must be resolved in favor of arbitration.  *Armijo v. Prudential Ins. Co. of America*, 72 F.3d 793, 798 (10th Cir. 1995).  While "the presumption in favor of arbitration is properly applied in interpreting the scope of an arbitration agreement, . . . this presumption disappears when the parties dispute the existence of a valid arbitration agreement." *Dumais v. American Golf Corp.,* 299 F.3d 1216, 1220 (10th Cir. 2002).

Plaintiff does not dispute that she agreed to abide by the provisions contained in the Arbitration Agreement, nor does she dispute that her claims fall within its scope.

(Pl.'s Resp. 2-3.) Nevertheless, Plaintiff argues that the Arbitration Agreement is unenforceable. *Id.* I address her specific arguments below.

> B. <u>Plaintiff's Arguments as to the Unenforceability of Arbitration Agreement</u>
>
> 1. <u>Whether the Arbitration Agreement is Unenforceable Because of the Disclaimer</u>

I first address Plaintiff's argument that the Arbitration Agreement should not be binding on Plaintiff because the Employee Handbook contained a disclaimer. The relevant provision reads, "[e]xcept for the Employment Arbitration Policy, nothing contained in this *Handbook* nor the *Handbook* itself should be considered a contract of employment. (Ex. A at 1.) Plaintiff relies on the holding in *Diaz v. Arapahoe (Burt) Ford, Inc.* for support for her assertion that the aforementioned disclaimer renders the Arbitration Agreement unenforceable. *Diaz,* 68 F. Supp. 2d 1193 (D. Colo. 1999).

In *Diaz*, the arbitration agreement stated that "all claims . . . [including] employment discrimination claims, . . . WILL BE RESOLVED EXCLUSIVELY THROUGH BINDING ARBITRATION" and that the arbitration provision may be enforced according to Colorado law, **but does not constitute an employment agreement . . . and does not make any other provision of the Employee manual contractual or otherwise legally enforceable**." *Id.*, 68 F. Supp. 2d at 1194 (emphasis in original). Judge Kane of this Court held that "[w]here an employee handbook sets forth the 'binding arbitration agreement' invoked by a defendant-employer to urge the dismissal of an employee's Title VII claims, a disclaimer in the handbook that nothing other than the arbitration provision is 'legally enforceable' is fatal to the defendant's position." *Id.* He further stated, "[w]hile an employer may wish the power to select

which representations in its manual an employee's 'acknowledgement and receipt' will make binding, I will neither confer such power nor give it the imprimatur of this court." *Id*.

I do not find *Diaz* particularly persuasive. First, in *Diaz*, the arbitration provision stated it was not an employment agreement, unlike here. Second, *Diaz* did not provide any detailed legal analysis or cite any authority for its holding.[1] Thus, I turn to other applicable law to determine whether the agreement at issue is unenforceable because of its disclaimer. The Tenth Circuit and the Colorado courts have not directly addressed the issue of whether or not use of such disclaimers preclude an employer from enforcing the arbitration agreement. My analysis thus turns to the general principles of contract formation.

The Supreme Court of Colorado has allowed employees to bring "legal and equitable claims based on an employer's failure to follow the termination procedures set out in an employee manual unilaterally published by the employer and not expressly made a part of the original employment agreement." *Continental Air Lines, Inc. v. Keenan,* 731 P.2d 708, 711 (Colo. 1987). The court in *Continental* held as follows:

> [an] employee may be entitled to relief under ordinary contract principles if he can demonstrate, first, that in promulgating the termination procedures the employer was making an offer to the employee – that is, the employer manifested his willingness to enter into a bargain in such a way as to justify the employee in understanding that his assent to the bargain was invited by the employer and that the employees's assent would conclude the bargain, Restatement (Second) of Contracts § 24(1981) – second, that his initial or

---

[1] I also note that cases interpreting *Diaz* have construed the contract in that case as illusory because the employer was able to select which representations and agreements in its manual are binding. *See Perez v. Hospitality Ventures-Denver LLC,* 245 F. Supp. 2d 172, 1174 (D. Colo. 2003). For the reasons explained in the next section, I find that the contract at issue here is not illusory.

>continued employment constituted acceptance of and consideration for those procedures.

*Id.*

Defendant points to the fact that other courts in this circuit have explicitly recognized that disclaimers provided in employment handbooks do not prevent the existence of a contract regarding some provisions, but not others. However, all of the cited cases concerned an employee seeking to limit the scope of the disclaimer in order to enforce the agreement against the employer. (*See* Reply at 6) (citing *Duran v. Flagstar Corp.,* 17 F. Supp. 2d 1195, 1201 (D. Colo. 1998); *Stahl v. Sun Microsystems, Inc.,* 775 F. Supp. 1394, 1396 (D. Colo. 1991)). While *Continental* and subsequent cases contemplate a situation where an *employee* seeks to enforce certain provisions against an *employer*, I do not see why the same outcome cannot arise where, like the instant case, the employer seeks enforcement against an employee who has expressly manifested consent to the terms of the agreement. Accordingly, I next consider whether Plaintiff manifested consent to the terms of the agreement.

In determining whether a valid arbitration clause exists, the general rule provides that the parties' intent to arbitrate controls, and determining this intent is a question of law for the Court to decide. *Armijo*, 72 F.3d at 798. In deciding this issue, courts generally apply ordinary state-law principals that govern the formation of contracts. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). In the instant case, neither party appears to dispute that Colorado law applies.

Under Colorado law, "in order to establish the existence of a contract, the evidence must show that the parties agreed upon all essential terms." *I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882, 888 (Colo. 1986). Further, "[t]he parties'

agreement is evidenced by their manifestations of mutual assent." *Id.* Here, as a condition of her employment, Plaintiff entered into an arbitration agreement with Defendant. Further, as previously stated, Plaintiff does not dispute her assent to the terms of the Arbitration Agreement.

Courts should "enforce the agreement as written unless there is an ambiguity in the language; courts should neither rewrite the agreement nor limit its effect by a strained construction." *Allen v. Pacheco,* 71 P.3d 375, 378 (Colo. 2003). Here, a reasonable reading of the relevant disclaimer is that it precludes the Handbook provisions from altering the Plaintiff's employment-at-will status, while excepting the Arbitration Agreement from its purview. I find the language of the disclaimer to be clear and not ambiguous. Therefore, despite the existence of the disclaimer, I find that the agreement is generally enforceable.

As further support for my holding, I rely on a case decided after *Diaz* in this Court by Judge Blackburn, *Alarape v. Group 1 Automotive, Inc.*, No. 06-cv-00873-REB-BNB, 2006 WL 2990212 (D. Colo. 2006). In *Alarape*, the plaintiffs brought suit for employment discrimination. The defendant claimed, as here, that the claims were subject to arbitration under the company's arbitration policy in the employee handbook. Plaintiff asserted that the arbitration clause was illusory and unenforceable. The handbook in which the arbitration provision was found stated, among other things:

> This handbook represents the current policies, regulations, and benefits, and that except for employment at-will status and the Arbitration Agreement, any and all policies or practices can be changed at any time by the Company. The Company retains the right to add, change or delete . . . . polices and all other working conditions at any time (except the policy of "at-will employment" and Arbitration Agreement, which may not be

> changed, altered, revised or modified without a writing signed by the President of the Company)).

*Id.*, 2006 WL 2990212, at *2.

Judge Blackburn found that the decision by the employer to describe "a subset of policies that are not subject to unilateral alteration or revocation by the employer" did not make the agreement invalid. *Id.* Instead, he held that "[a]n employee manifests his agreement to such modifications in the employer's policies by continuing his employment with knowledge of the modification. *Id.* (citing *Frymire v. Ampex Corp.*, 61 F.3d 757, 769-70 (10th Cir.1995) and other cases). Accordingly, he held that each plaintiff was a party to a valid agreement to arbitrate. *Id.* 2-3.

Under the analysis in *Alarape*, I find that the decision by Defendant to describe a subset of policies that are binding and enforceable did not make the employment contract as a whole (or the Arbitration Agreement) unenforceable. Further, I find that Plaintiff manifested her agreement to Defendant's decision to make the arbitration agreement binding by agreeing to employment with knowledge of this condition.

### 2. Whether the Arbitration Agreement is Illusory

Plaintiff also argues that the Arbitration Agreement is unenforceable because it is illusory. In order to determine whether or not the Arbitration Agreement is illusory, I look to the language of the agreement. The Employment Arbitration Policy provides in relevant part:

> The Company reserves the right to revise, amend, modify, or discontinue the Policy at any time in its sole discretion. Such amendments may be made by publishing them in the *Handbook* or by separate release to employees **and shall be effective 30 calendar days after such amendments are provided to employees and will apply prospectively only.** Your continuation of

employment after receiving such amendments shall be deemed acceptance of the amended terms.

(Ex. A at 41) (emphasis added).

Plaintiff argues that the correct reading of this provision would bind only Plaintiff, and not Defendant to the terms. (Pl.'s Resp. 3.) The law of this Circuit provides that "an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory." *Dumais v. American Golf Corp.,* 299 F.3d 1216, 1219 (10th Cir. 2002); *see also Gurley v. Yellow Transp., LLC*, 178 F. Supp. 2d 1196, 1202-03 (D. Colo. 2001) and *Perez v. Hospitality Ventures-Denver, LLC*, 245 F. Supp. 2d 1172 (D. Colo. 2003) (relied on by Plaintiff).

However, an arbitration agreement that allows the drafting party only a limited right to modify the agreement, *i.e.*, a right to modify the agreement under certain restrictions, may not be illusory. *See Hardin v. First Cash Financial Services*, 465 F.3d 470, 478 (10th Cir. 2006). In *Hardin,* a clause in the arbitration agreement provided that the defendant employer "retains the right to terminate the [Agreement]. . . . And/or to modify or discontinue the [Dispute Resolution Program]." *Id.* The court held that the agreement was valid because this right was limited. *Id.* The limitations provided that prior to amending or terminating the agreement, the defendant would comply with the following restrictions: 1) provide 10-days notice to its current employees; 2) not amend the agreement if it had actual notice of a potential dispute or claim; and 3) not terminate the agreement as to any claims which arose prior to the date of termination. *Id.*

Other courts have upheld similar provisions where the employer was required to give notice or was otherwise restricted in some way before amending or changing the

agreement. *See Alarape,* 2006 WL 2990212, at *2 (D. Colo. 2006) (holding that the agreement was not illusory where defendants retained the right to alter or amend the policy because any alteration had to be provided in writing and signed by the president of the company and noting that other district courts within this circuit have found provisions that merely require advance notice of changes to the company's arbitration policy are not illusory under the principle announced in *Dumais*) (citing cases). Indeed, the cases cited in *Dumais* which found an employment agreement illusory all relied on the fact that the employer was able to modify the handbook or arbitration provision without notice. *See Dumais*, 299 F.3d at 1219 (citing *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 939 (4th Cir.1999); *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1133 (7th Cir.1997) (Cudahy, J., concurring)).

Like the agreement in *Hardin,* Defendant's right to modify or change the employment agreement in any way is not unrestricted. Instead, if Defendant decides to modify or terminate the agreement, the change will not become effective until Defendant has provided its employees 30-days notice. (Ex. A at 41.) In addition, any alterations would apply prospectively only. *Id.* Accordingly, under the authority cited above, the agreement was not illusory.

Next, Plaintiff argues that mere notification is insufficient; the Arbitration Agreement is illusory because Defendant is not required to seek Plaintiff's approval prior to altering the terms of the Arbitration agreement. Plaintiff cites *Piano v. Premier Distributing Co.*, 137 N.M. 57, 60 (N.M. Ct. App. 2004), as support for her argument. However, the holding in *Piano* turned on the fact that the plaintiff was an at-will employee prior to signing the arbitration agreement, and therefore, the implied promise

-9-

of continued at-will employment did not constitute consideration. *Id.* at 60. *Piano* is distinguishable from the facts before this Court. Here, Defendant's initial hiring of Plaintiff was conditioned on her consent to the terms of the Arbitration Agreement; thus, there was consideration in the form of employment. Further, Defendant does need Plaintiff's approval—Plaintiff had up to 30 days to contest any changes to the Arbitration Agreement and/or to decide whether to continue employment based on such changes. Moreover, the holding in *Piano* is not binding on this court.

Instead, I find the Tenth Circuit opinion in *Hardin* persuasive as to this argument. It held: "[w]hile 'the reservation of a unilateral right to cancel [an] entire agreement is so broad as to negate the existence of any consideration in that the promise is essentially empty or illusory,' if 'notice of cancellation is required the promisor is bound sufficiently so that his promise to buy or give notice of cancellation meets the requirement of consideration.'" *Hardin,* 465 F.3d 470 at 478. In this case, I find that the Arbitration Agreement clearly demonstrates that Plaintiff was entitled to notice upon any changes. Accordingly, I reject Plaintiff's argument that it was illusory.

        3.      <u>Whether the Arbitration Agreement is Void Because It Violates Plaintiff's Essential Right to Collect Attorney Fees if Successful</u>

Finally, I must determine whether the Arbitration Agreement entitles Plaintiff to recover attorney fees if she were to prevail on her claims in arbitration. Plaintiff suggests that the Arbitration Agreement is void because it "does not allow for post-hearing briefs, and thus violates Plaintiff's essential right to collect attorney's fees if successful." (Pl.'s Resp. 8.) Plaintiff relies on the following language from section 15 of the Employment Arbitration Policy,

> The arbitrator may receive and consider the evidence of witnesses by affidavit but shall give it only such weight as the arbitrator deems it entitles to after consideration of any objection made to its admission. **All documents to be considered by the arbitrator shall be filed at the hearing.**

(Pl.'s Resp. at 8) (quoting from Ex. A at 39) (emphasis added). Plaintiff cites Judge Babcock's holding in *Gourley* for support of her argument. The relevant provision in *Gourley* states,

> The arbitrator may receive and consider the evidence of witnesses by affidavit, but shall give it only such weight as the arbitrator deems it entitled to after consideration of the objection made to its admission. **All documents to be considered by the arbitrator shall be filed at the hearing. There shall be no post-hearing briefs.**

*Gourley,* 178 F. Supp. 2d at 1204 (emphasis added).

Unlike the provision in *Gourley*, the provision at issue in this case does not expressly state that there shall be no post-hearing briefs. (Ex. A at 39.) More importantly, Plaintiff ignores section 20(b) of the Employment Arbitration Policy, which states, "The arbitrator may award punitive or exemplary damages or attorneys' fees where expressly provided by applicable law." (Ex. A at 40.) Thus, the arbitration policy at issue expressly provides Plaintiff the opportunity to receive attorney's fees when applicable.

IV. <u>CONCLUSION</u>

Based on the foregoing, I find that the motion to compel arbitration should be granted. However, I deny the portion of the motion that seeks to stay further proceedings against the Defendant pending completion of the arbitration. Instead, the case shall be administratively closed subject to being reopened for good cause shown

-11-

pursuant to D.C.COLO.LCivR 41.2.  *See Quinn v. CGR*, 828 F.2d 1463, 1465 and n. 2 (10th Cir. 1987) (construing administrative closure as the practical equivalent of a stay). Good cause for reopening the case shall include any further court proceedings the parties deem necessary after the termination of the arbitration proceeding.

In conclusion, it is

ORDERED that Defendant Citigroup Inc.'s Motion to Compel Arbitration and to Stay Further Proceedings Against Defendant Citigroup Inc. Pending Completion of the Arbitration (Doc. # 11 filed June 03, 2008), is **GRANTED IN PART AND DENIED IN PART**.  Specifically, the portion of the motion that seeks to compel arbitration is **GRANTED**, and the parties are directed to proceed with arbitration in this case.  The portion of the motion that seeks to stay further proceedings is **DENIED**.  Instead, it is

ORDERED that this case shall be **ADMINISTRATIVELY CLOSED** subject to reopening for good cause shown pursuant to D.C.COLO.LCivR 41.2.  Finally, it is

ORDERED that not later than 20 days after the completion of the arbitration proceeding, the parties shall file a status report advising the Court whether they believe the case should be reopened for good cause for any further proceedings in this Court or whether the case can be dismissed.

Dated:  February 12, 2009

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge